THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN BONE, Defendant-Appellant.

Third District   No. 3—86—0243

Opinion filed April 10, 1987.

Karen Munoz, of State Appellate Defender's Office, of Springfield, for appellant.

John A. Barra, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Steven Bone, was convicted of murder, felony murder, and two counts of armed robbery. (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(2), 9—1(a)(3), 18—2.) On direct appeal, this court vacated the felony murder conviction and remanded the case for resentencing. On resentencing, the trial court imposed concurrent sentences of 40 years for murder and 20 years for armed robbery. This court affirmed the sentences.

The petitioner then filed a *pro se* petition for post-conviction relief. The trial court ordered that counsel be appointed to represent the petitioner and gave defense counsel 45 days to file an amended petition. Following a hearing on the petition, the court granted the State's motion to dismiss the post-conviction petition. The petitioner appeals the order of dismissal.

On appeal, the petitioner first argues that he was denied effective assistance of counsel when his attorney, in his closing argument, conceded the petitioner's guilt of felony murder and armed robbery. Further, the petitioner contends that his appellate counsel was also ineffective in not raising the issue on direct appeal.

The record shows that the petitioner pleaded not guilty to all of the charges. The State's evidence, presented in part through the testimony of one eyewitness and the stipulated testimony of two other eyewitnesses, showed that the petitioner walked into a gas station, shot and killed an attendant without provocation, then demanded that the other attendant give him the money in the cash registers. The State also presented evidence that the weapon belonged to the petitioner and that the petitioner was in the immediate vicinity of the station before and after the offenses.

After the State rested its case, the petitioner expressly refused to take the witness stand, despite his counsel's advice that he should tes-

tify. The petitioner confirmed his decision to the judge out of the presence of the jury. Having no witnesses, the defense rested its case.

During closing arguments, defense counsel argued at length that the evidence left a reasonable doubt regarding whether the petitioner had shot the attendant intentionally or accidentally. The essence of counsel's argument was that the State had not proved the intent element necessary to convict the petitioner of murder. While making this argument, which defense counsel repeatedly stated was limited to the murder charge, counsel said, "Well, you heard the evidence and I heard the evidence, and I certainly would agree that he did perform the acts that caused the death of [the victim]."

The petitioner's attorney made no arguments or admissions specifically regarding the felony murder and armed robbery charges. The petitioner argues, however, that the quoted statement admitted by implication the petitioner's guilt of felony murder and armed robbery.

Our analysis of this case proceeds from *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513. In *Hattery*, the defendant was charged with murder and pleaded not guilty. Nonetheless, the defendant's trial counsel admitted during his opening statement that the defendant had done everything the prosecution alleged in its opening statement. The defense counsel went so far as to state that the defense was not asking the jury to find the defendant not guilty and that in fact the jury would find him guilty. During the trial, the defense counsel advanced no theory of defense, presented no evidence, and made no closing argument. Instead, counsel attempted to show through cross-examination that the defendant had murdered three people because he believed a codefendant would have murdered the defendant's family if he did not do so.

On appeal, the defendant argued that he received ineffective assistance of counsel. The Illinois Supreme Court first noted the traditional test for determining ineffective assistance of counsel claims as set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under the *Strickland* test, a defendant must show: (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.

The *Hattery* court went on to find, however, that some acts of counsel are so likely to prejudice the accused that prejudice will be presumed. In this category, the court included a defense counsel's failure to subject the prosecution's case to meaningful adversarial testing, thus denying the defendant his sixth amendment rights and mak-

ing the adversarial process itself presumptively unreliable. *People v. Hattery* (1986), 109 Ill. 2d 449, 488 N.E.2d 513, citing *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.

The *Hattery* court then stated that in the case at bar the defense attorney's concession of the defendant's guilt was unequivocal. Further, the court stated that the defendant's counsel had, in fact, offered no defense since compulsion was not a defense to an offense punishable by death, but was only a possible mitigating factor which might preclude imposition of the death penalty. The defense counsel's trial strategy, said the court, was totally at odds with the defendant's earlier plea of not guilty. There was no evidence that the defendant had consented to his attorney's strategy, and such consent would not be presumed from a silent record. Accordingly, concluded the court, even when no theory of defense was available, given the decision to stand trial, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt. Counsel could not concede his client's guilt in hope of obtaining a more lenient sentence where a plea of not guilty had been entered unless the record adequately showed that the defendant knowingly and intelligently consented to his counsel's strategy. The court held that such a concession by counsel was *per se* ineffective assistance of counsel. *People v. Hattery* (1986), 109 Ill. 2d 449, 488 N.E.2d 513.

In *Hattery*, the Illinois Supreme Court delineated a *per se* exception to the general case-by-case analysis set forth in *Strickland.* Problems and abuses could stem from this exception if it were to be too loosely applied. For instance, a defense counsel who had conducted a completely adversarial trial could see that the State had a particularly strong case. During closing arguments, such counsel, while essentially arguing that the State had not met its burden of proof, could slip in an admission of his client's guilt. Then, the defendant could accept the verdict if it was to his liking. If it was not to his liking, he need only point out on appeal counsel's admission of guilt. Under the *per se* prejudice rule, the defendant would automatically receive a new trial. Such a trial tactic, which is especially foreseeable in death penalty cases, could be repeated indefinitely until the State's case weakened sufficiently through the passage of time or the defendant happened to get a favorable jury.

This hypothetical situation is certainly not present in the case at bar. We offer it only to illustrate why we believe the supreme court intended that the stringent *per se* exception should be applied only when the facts of the case fit squarely within those found in *Hattery.*

In all other cases, we find that the supreme court intended that the case-by-case, two-part *Strickland* test should continue to be applied. See also *People v. Weir* (1986), 111 Ill. 2d 334, 490 N.E.2d 1.

In the instant case, the facts differ in several, significant respects from those found in *Hattery*. Here, no admission of guilt was made during opening statements. The petitioner's counsel vigorously cross-examined the State's witnesses and attempted to present evidence through the petitioner's testimony. The petitioner expressly refused, on the record, to testify, despite his counsel's advice. During closing arguments, defense counsel offered a viable defense to the murder charge. Counsel's allegedly incriminatory statement is considerably more vague than counsel's concessions in the *Hattery* case. The statement clearly does not admit the defendant's guilt for murder and only admits his guilt for felony murder by implication, if at all. Further, even if we agree that the statement conceded the defendant's guilt of felony murder, the point is moot since we previously vacated the felony murder conviction. As for armed robbery, we find that the statement, taken in its proper context, is far too vague and extenuated to be an admission of guilt as set forth in *Hattery*. Accordingly, we find that the general, two-part *Strickland* test should be applied to the instant case.

■ We are not convinced, given the vagueness, brevity, and context of the defense counsel's statement, that his performance fell below an objective standard of reasonableness. However, assuming for argument's sake that it did, we find that there is not a reasonable probability that the results of the proceeding would have been different had counsel not made the statement in question. The State's evidence was strong and convincing. The defense counsel offered one of the few viable defenses available to the defendant. Counsel in no way admitted the defendant's guilt of murder, yet the jury convicted him on that charge. Accordingly, we find that defense counsel's statement did not sufficiently prejudice the defendant's case to have made any difference in the outcome.

Given our decision, we need not address the petitioner's contention that his appellate counsel was also ineffective in not raising the issue on direct appeal.

■ Second, the petitioner argues that the cause must be remanded for further proceedings because of the failure of his appointed counsel to file a certificate pursuant to Supreme Court Rule 651(c) (87 Ill. 2d R. 651(c)) indicating that he consulted with the petitioner, examined the trial record, and made any necessary amendments to the *pro se* post-conviction petition.

Failure to file a Supreme Court Rule 651(c) certificate is harmless error if an examination of the record clearly indicates that counsel met the requirements of the rule. (*People v. Ford* (1981), 99 Ill. App. 3d 973, 426 N.E.2d 340.) When the record is incomplete or silent, the reviewing court will presume that the trial judge ruled or acted correctly. *People v. Hamilton* (1978), 64 Ill. App. 3d 276, 381 N.E.2d 74.

In the instant case, the record shows that a hearing was held on the motion to dismiss. However, no transcript or bystander's report of what occurred at this hearing is included in the record. We must therefore presume that the trial court ruled correctly and that the petitioner's counsel met the requirements of Supreme Court Rule 651(c).

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.